TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2931
    Facsimile: (213) 894-6269
    E-mail:   Monica.Tait@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
12/6/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VM _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>        v.<br><br>CHARLES STEWART WHITE, JR.,<br><br>       Defendant. | No. CR 2:21-cr-00560-PA<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CHARLES STEWART WHITE JR. |

1.   This constitutes the plea agreement between CHARLES STEWART WHITE, JR. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of kickbacks solicited and received by defendant from vendors who sold products to defendant's former employer.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   At or before the time of sentencing, make a prejudgment payment by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $278,072 to be applied to satisfy defendant's anticipated criminal debt.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The

2

government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 1956 arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 10 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 18 or higher.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in the information, that is, wire fraud, the following must be true:  (a) the defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (b) the statements made or

4

facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (c) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (d) the defendant caused to be used an interstate or international wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any relevant conduct, as defined in U.S.S.G. § 1B1.3 for any losses suffered by that victim as a result of such conduct in connection with the offense to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $278,000, payable as follows pursuant to 18 U.S.C. § 3664(j):  $5,000 to the Employer described in the factual

basis below, and the remainder to the Employer's insurance company. The parties recognize and agree that the restitution amount and names of payees could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States

citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

From 2012 to at least 2015, defendant and his wife lived in Camarillo, California.  Defendant worked at a company located in and doing business from Moorpark, California ("Employer"), in Ventura County.  One of defendant's job responsibilities was to purchase, and

1  supervise the purchase of, products from vendors in China on

2  Employer's behalf.

3       Beginning no later than in or about July 2012 and continuing

4  through approximately May 20, 2015, defendant, within the Central

5  District of California and elsewhere, knowingly and with intent to

6  defraud, devised, participated in, and executed a scheme to defraud

7  Employer as to material matters, and to obtain money from Employer by

8  means of material false and fraudulent pretenses, representations,

9  and promises, and the concealment of material facts.

10      The fraudulent scheme operated, in substance, in the following

11 manner:   Without Employer's knowledge or consent, defendant made

12 agreements with the representatives of four vendors in China as

13 follows:   that when defendant purchased products from the vendors on

14 behalf of Employer, the vendors would pay defendant a secret illegal

15 payment based on a percentage of the amount of money Employer would

16 pay the vendors for their products.

17      Thereafter, defendant would knowingly cause the vendors to

18 submit invoices to Employer that contained material false

19 representations, in that they represented that the full cost billed

20 to Employer was for the items listed on the invoices.   In fact, as

21 defendant then knew, the vendors' invoices were inflated to cover

22 secret illegal payments to defendant which had been arranged in

23 advance.   The secret illegal payment amount varied, but was usually

24 from 1-3% of some or all of the products the vendors were selling to

25 Employer.

26      Employer often paid the false invoices by making international

27 wire transfers from Employer's Union Bank account to accounts in

28 China designated by the vendors.   After Employer paid the vendors on

the invoices, the vendors, from their locations in China, would pay the pre-arranged applicable secret illegal payment amount to defendant by sending funds to:  (a) an account in Hong Kong defendant and his wife controlled; and (b) an account in China in the name of a relative of defendant's wife.

As a result of the fraudulent scheme, defendant WHITE caused the Employer to pay a total of approximately $278,072 to four vendors under the false pretense that the money was paying for products obtained from the vendors when in fact it was being used to pay defendant's secret illegal payments.  The Employer sustained a loss of at least $278,072, which the Employer was made to believe was part of the cost of the products it was obtaining when in fact it was used to fund defendant's secret illegal payments.  A substantial amount of the scheme was committed from outside the United States, in that defendant met with at least one of the vendors in China concerning secret illegal payments, and defendant received his secret illegal payments in China and Hong Kong.

On or about May 13, 2015, in Ventura County, within the Central District of California, and elsewhere, defendant, for the purpose of executing the above-described scheme to defraud, transmitted, and caused the transmission of an item by international wire and radio communication in interstate and foreign commerce, namely, an international wire transfer of approximately $124,912.85 from Employer's Union Bank account ending in 5027 to an account at Bank of China, in China, for, among other things, payment of the amount billed on a vendor's invoice number 30217, which amount included money to pay a secret illegal payment.

1          <u>SENTENCING FACTORS</u>

2          11.  Defendant understands that in determining defendant's
3     sentence the Court is required to calculate the applicable Sentencing
4     Guidelines range and to consider that range, possible departures
5     under the Sentencing Guidelines, and the other sentencing factors set
6     forth in 18 U.S.C. § 3553(a).  Defendant understands that the
7     Sentencing Guidelines are advisory only, that defendant cannot have
8     any expectation of receiving a sentence within the calculated
9     Sentencing Guidelines range, and that after considering the
10    Sentencing Guidelines and the other § 3553(a) factors, the Court will
11    be free to exercise its discretion to impose any sentence it finds
12    appropriate up to the maximum set by statute for the crime of
13    conviction.

14         12.  Defendant and the USAO agree to the following applicable
15    Sentencing Guidelines factors:

16    Base Offense Level:            7     [U.S.S.G. § 2B1.1(a)(1)]

17    Specific Offense
      Characteristics:
18
      Loss over $250,000 but less
19    than $550,000                 +12   [U.S.S.G. § 2B1.1(b)(1)(G)]

20    Substantial part of scheme
      committed from outside U.S.   +2    [U.S.S.G. §2B1.1(b)(10)(B)]
21

22    Defendant and the USAO reserve the right to argue that additional
23    specific offense characteristics, adjustments, and departures under
24    the Sentencing Guidelines are appropriate.

25         13.  Defendant understands that there is no agreement as to
26    defendant's criminal history or criminal history category.

27         14.  Defendant and the USAO reserve the right to argue for a
28    sentence outside the sentencing range established by the Sentencing

1  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
2  (a)(2), (a)(3), (a)(6), and (a)(7).

3                    <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

4      15.  Defendant understands that by pleading guilty, defendant
5  gives up the following rights:

6          a.   The right to persist in a plea of not guilty.

7          b.   The right to a speedy and public trial by jury.

8          c.   The right to be represented by counsel -- and if
9  necessary have the Court appoint counsel -- at trial.  Defendant
10 understands, however, that, defendant retains the right to be
11 represented by counsel -- and if necessary have the Court appoint
12 counsel -- at every other stage of the proceeding.

13         d.   The right to be presumed innocent and to have the
14 burden of proof placed on the government to prove defendant guilty
15 beyond a reasonable doubt.

16         e.   The right to confront and cross-examine witnesses
17 against defendant.

18         f.   The right to testify and to present evidence in
19 opposition to the charges, including the right to compel the
20 attendance of witnesses to testify.

21         g.   The right not to be compelled to testify, and, if
22 defendant chose not to testify or present evidence, to have that
23 choice not be used against defendant.

24         h.   Any and all rights to pursue any affirmative defenses,
25 Fourth Amendment or Fifth Amendment claims, and other pretrial
26 motions that have been filed or could be filed.

27

28

1

## WAIVER OF STATUTE OF LIMITATIONS

2      16.  Having been fully advised by defendant's attorney regarding

3  application of the statute of limitations to the offense to which

4  defendant is pleading guilty, defendant hereby knowingly,

5  voluntarily, and intelligently waives, relinquishes, and gives up:

6  (a) any right that defendant might have not to be prosecuted for the

7  offense to which defendant is pleading guilty because of the

8  expiration of the statute of limitations for that offense prior to

9  the filing of the information alleging that offense; and (b) any

10  defense, claim, or argument defendant could raise or assert that

11  prosecution of the offense to which defendant is pleading guilty is

12  barred by the expiration of the applicable statute of limitations,

13  pre-indictment delay, or any speedy trial violation.

14

## WAIVER OF APPEAL OF CONVICTION

15      17.  Defendant understands that, with the exception of an appeal

16  based on a claim that defendant's guilty plea was involuntary, by

17  pleading guilty defendant is waiving and giving up any right to

18  appeal defendant's conviction on the offense to which defendant is

19  pleading guilty.  Defendant understands that this waiver includes,

20  but is not limited to, arguments that the statute to which defendant

21  is pleading guilty is unconstitutional, and any and all claims that

22  the statement of facts provided herein is insufficient to support

23  defendant's plea of guilty.

24

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25      18.  Defendant agrees that, provided the Court imposes a term of

26  imprisonment within or below the range corresponding to an offense

27  level of 20 and the criminal history category calculated by the

28  Court, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $278,072; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7)

19.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $278,072.

<u>WAIVER OF COLLATERAL ATTACK</u>

20.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the

applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to

14

perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.   The parties agree that this agreement will be considered

//

1    part of the record of defendant's guilty plea hearing as if the

2    entire agreement had been read into the record of the proceeding.

3    AGREED AND ACCEPTED

4    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
5    CALIFORNIA

6    TRACY L. WILKISON
     United States Attorney
7

8    /s/ Monica E. Tait                          12/2/2021
     MONICA E. TAIT                               Date
9    Assistant United States Attorney

10   Charles S White Jr
     CHARLES STEWART WHITE JR.                    12/1/21
11   Defendant                                    Date

12   Mark Werksman
     MARK J. WERKSMAN                             12/01/2021
13   Attorney for Defendant CHARLES               Date
     STEWART WHITE JR.
14

15

16

17              CERTIFICATION OF DEFENDANT

18        I have read this agreement in its entirety.  I have had enough

19   time to review and consider this agreement, and I have carefully and

20   thoroughly discussed every part of it with my attorney.  I understand

21   the terms of this agreement, and I voluntarily agree to those terms.

22   I have discussed the evidence with my attorney, and my attorney has

23   advised me of my rights, of possible pretrial motions that might be

24   filed, of possible defenses that might be asserted either prior to or

25   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26   of relevant Sentencing Guidelines provisions, and of the consequences

27   of entering into this agreement.  No promises, inducements, or

28   representations of any kind have been made to me other than those

                              18

contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

*Charles S White Jr*

_____     12/1/21
CHARLES STEWART WHITE JR.                Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am CHARLES STEWART WHITE JR.'s attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

*Mark Werksman*

_____     12/01/2021
MARK J. WERKSMAN                         Date
Attorney for Defendant CHARLES
STEWART WHITE JR.

19

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          No. CR

11          Plaintiff,                  I N F O R M A T I O N

12          v.                          [18 U.S.C. § 1343: Wire Fraud]

13   CHARLES STEWART WHITE, JR.,

14          Defendant.

15
        The United States Attorney charges:
16
                        [18 U.S.C. § 1343]
17
     A.   INTRODUCTORY ALLEGATIONS
18
          1.   At times relevant to this Information:
19
               a.   Defendant CHARLES STEWART WHITE, JR. lived in
20
     Camarillo, California, with his wife.
21
               b.   Defendant WHITE worked at a company located in and
22
     doing business from Moorpark, California ("Employer").  One of
23
     defendant WHITE's job responsibilities was to purchase, and supervise
24
     the purchase of, products from vendors in China on Employer's behalf.
25
               c.   Employer controlled an account at Union Bank, which
26
     Employer used to initiate wire transfers to pay for products Employer
27

28

                              EXHIBIT A

1   purchased from vendors located in China, including products defendant

2   WHITE ordered.

3   B.   THE SCHEME TO DEFRAUD

4        2.   Beginning on a date unknown, but no later than in or about

5   July 2012, and continuing through approximately May 20, 2015, in

6   Ventura County, within the Central District of California, and

7   elsewhere, defendant WHITE, knowingly and with intent to defraud,

8   devised, participated in, and executed a scheme to defraud Employer

9   as to material matters, and to obtain money and property from

10  Employer by means of material false and fraudulent pretenses,

11  representations, and promises, and the concealment of material facts.

12       3.   The fraudulent scheme operated, in substance, in the

13  following manner:

14            a.   Without Employer's knowledge or consent, defendant

15  WHITE made agreements with representatives of certain vendors in

16  China as follows:  that when defendant WHITE purchased products from

17  the vendors on behalf of Employer, the vendors would pay defendant

18  WHITE a secret illegal payment based on a percentage of the amount of

19  money Employer would pay the vendors for the ordered products.

20            b.   Thereafter, defendant WHITE would knowingly cause the

21  vendors to submit invoices to Employer that contained material false

22  representations and pretenses, including the representation and

23  pretense that the full amount billed to Employer was the cost of the

24  items listed on the invoices.  In fact, as defendant WHITE then knew,

25  the vendors' invoices were inflated and a portion of the amount

26  billed would be used to cover secret illegal payments to defendant

27  WHITE which defendant WHITE had arranged with the vendors in advance

28  to receive.

EXHIBIT A

        c.   Employer often paid the false invoices by making international wire transfers from Employer's Union Bank account to accounts in China designated by the vendors.  After Employer paid the vendors on the invoices, the vendors, from their locations in China, would pay the pre-arranged applicable secret illegal payment amounts to defendant WHITE by sending funds to:

            i.   an account in Hong Kong defendant WHITE and his wife controlled; and

            ii.  an account in China in the name of a relative of defendant WHITE's wife.

    4.   As a result of the fraudulent scheme, defendant WHITE caused the Employer to pay a total of approximately $278,072 to four vendors under the false pretense that the money was paying for products obtained from the vendors when in fact it was being used to pay defendant WHITE's secret illegal payments.  The Employer sustained a loss of at least $278,072, which the Employer was made to believe was part of the cost of the products it was obtaining when in fact it was used to fund defendant WHITE's secret illegal payments.

C.   THE USE OF THE WIRES

    5.   On or about May 13, 2015, in Ventura County, within the Central District of California, and elsewhere, defendant WHITE, for the purpose of executing the above-described scheme to defraud, transmitted, and caused the transmission of, an item by international wire and radio communication in interstate and foreign commerce, namely, an international wire transfer of approximately $124,912.85 from Employer's Union Bank account ending in 5027 to an account

//

3

EXHIBIT A

1    at Bank of China, in China, for, among other things, payment of the

2    amount billed on a vendor's invoice number 30217, which amount

3    included money to pay a secret illegal payment.

4                                    TRACY L. WILKISON
                                     United States Attorney
5

6

7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
10                                   Chief, Major Frauds Section

11                                   MONICA E. TAIT
                                     Assistant United States Attorney
12                                   Deputy Chief, Major Frauds Section

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A