TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar. No. 157311)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2931
     Facsimile: (213) 894-6269
     E-mail:   Monica.Tait@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-00560-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING |
| v. | |
| CHARLES STEWART WHITE, JR., | SENTENCING: May 16, 2022, 830 AM |
| Defendant. | Before the Hon. Percy Anderson, United States District Judge |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Monica E. Tait, hereby files its sentencing position as to defendant CHARLES STEWART WHITE, JR.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case

//

1

including the Presentence Report, and such further evidence and argument as the Court may permit.

Dated: April 25, 2022                    Respectfully submitted,

                                         TRACY L. WILKISON
                                         United States Attorney

                                         SCOTT M. GARRINGER
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                              /s/
                                         MONICA E. TAIT
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Defendant Charles Stewart White, Jr. ("WHITE" or "defendant") is due to appear for sentencing on his pre-indictment plea to one count of wire fraud, in violation of 18 U.S.C. § 1343. White embezzled about $278,072 from his employer by agreeing to and receiving secret payments from four vendors in China doing business with the employer, in the form of about 1-3% of the value of the products the victim company was buying from the vendors.

As argued below, the advisory Guidelines Sentencing offense level is 18, but the Court should vary downward two points pursuant to United States v. Booker to level 16 to recognize defendant's extraordinary acceptance of responsibility by depositing with the Clerk of Court his anticipated restitution payment at or about the time he entered his guilty plea. Favorably recognizing this action promotes the administration of justice by encouraging other defendants to do the same. The government recommends that the Court sentence defendant to 21 months' imprisonment (the low end of the advisory guidelines range for offense level 16), followed by a 3-year period of supervised release, and order restitution in the amount of $278,072 (which, once ordered, the Clerk's office will distribute to the victim and its insurance company) and a special assessment of $100.

II.  **OFFENSE CONDUCT**

For five years, defendant worked at a company in Ventura County, California ("Employer"), and purchased and supervised the purchase of products from vendors in China for the Employer. (Presentence Report ("PSR") ¶ 1.) Beginning no later than July 2012, and continuing

3

1  until May 2015, defendant knowingly and intentionally defrauded
2  Employer in an unlawful wire fraud scheme in violation of 18 U.S.C.
3  § 1343, as set forth in the factual basis for the plea agreement:

> The fraudulent scheme operated, in substance, in the following manner:  Without Employer's knowledge or consent, defendant made agreements with the representatives of four vendors in China as follows:  that when defendant purchased products from the vendors on behalf of Employer, the vendors would pay defendant a secret illegal payment based on a percentage of the amount of money Employer would pay the vendors for their products.
>
> Thereafter, defendant would knowingly cause the vendors to submit invoices to Employer that contained material false representations, in that they represented that the full cost billed to Employer was for the items listed on the invoices.  In fact, as defendant then knew, the vendors' invoices were inflated to cover secret illegal payments to defendant which had been arranged in advance.  The secret illegal payment amount varied, but was usually from 1-3% of some or all of the products the vendors were selling to Employer.
>
> Employer often paid the false invoices by making international wire transfers from Employer's Union Bank account to accounts in China designated by the vendors.  After Employer paid the vendors on the invoices, the vendors, from their locations in China, would pay the pre-arranged applicable secret illegal payment amount to defendant by sending funds to:  (a) an account in Hong Kong defendant and his wife controlled; and (b) an account in China in the name of a relative of defendant's wife.
>
> As a result of the fraudulent scheme, defendant WHITE caused the Employer to pay a total of approximately $278,072 to four vendors under the false pretense that the money was paying for products obtained from the vendors when in fact it was being used to pay defendant's secret illegal payments.  The Employer sustained a loss of at least $278,072, which the Employer was made to believe was part of the cost of the products it was obtaining when in fact it was used to fund defendant's secret illegal payments.  A substantial amount of the scheme was committed from outside the United States, in that defendant met with at least one of the vendors in China concerning secret illegal payments, and defendant received his secret illegal payments in China and Hong Kong.
>
> On or about May 13, 2015, in Ventura County, within the Central District of California, and elsewhere, defendant, for the purpose of executing the above-described scheme to defraud, transmitted, and caused the transmission of an

4

item by international wire and radio communication in interstate and foreign commerce, namely, an international wire transfer of approximately $124,912.85 from Employer's Union Bank account ending in 5027 to an account at Bank of China, in China, for, among other things, payment of the amount billed on a vendor's invoice number 30217, which amount included money to pay a secret illegal payment.

(Plea Agreement at pp. 8-9 (Dkt. 6); see also PSR at ¶¶ 11-18).

**III. CONCURRENCE WITH PRESENTENCE REPORT, AND ADVISORY GUIDELINES CALCULATION[1]**

The PSR has correctly calculated the advisory Guidelines range as follows:

| | | |
|---|---|---|
| Base offense level | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss above $250,000 but less than $550,000 | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Substantial part of scheme committed from outside USA | +2 | U.S.S.G. §2B1.1(b)(10)(B) |
| Subtotal | 21 | |
| Acceptance of responsibility | -3 | U.S.S.G. § §3E1.1(a)-(b) |
| Total Offense Level | 18 | (27-33 months) |

(PSR at pp. 6-7.)[2] The PSR's calculations above are also consistent with the parties' agreements concerning the Guidelines. (Plea

---

[1] The government notes one typo in the PSR that does not affect its conclusions: the offense in this matter is wire fraud, not "Wire Fraud Affecting a Financial Institution" (see PSR at 6), which carries a higher statutory maximum sentence. 18 U.S.C. § 1343.

[2] The government concurs that there should be no upward adjustment for role, including for abuse of a position of private trust "in a manner that significantly facilitated the commission or concealment of the offense . . ." (emphasis added). U.S.S.G. § 3B1.3. While defendant's job involved supervising the purchasing of goods from vendors, it is not clear that defendant's position significantly made the fraud easier to commit or conceal than it would have been for the other buyers working for Employer. Nor does
*(footnote cont'd on next page)*

5

Agreement at 10.) The government agrees that defendant's criminal history category is I. (PSR ¶ 84.)

The government also concurs with the PSR's restitution calculation in the amount of $278,072.[3] Notably, the government believes that defendant has already tendered this amount to the Clerk of the Court.

**IV. ANALYSIS OF THE § 3553(A) FACTORS SUPPORTS A 21-MONTH SENTENCE OF IMPRISONMENT**

Pursuant to United States v. Booker, the government recommends that the Court vary downward 2 levels to account for defendant's extraordinary acceptance of responsibility, as shown by his extremely early payment of the jointly-anticipated restitution amount. At level 16, the resulting advisory guidelines range is 21-27 months' imprisonment. Based on the factors set forth in 18 U.S.C. § 3553(a), defendant should be sentenced to 21 months of imprisonment, the low end of this range. This sentence is sufficient, but no greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a). The key § 3553(a) factors are addressed below.

**A. The Nature and Circumstances of the Offense, and the Need For the Punishment to Reflect the Seriousness of the Offense and Provide Just Punishment**

Defendant embezzled $278,000 from the Employer over a three-year period through his padded invoice/kickback scheme, which is a substantial amount of money. Moreover, it appears these gains to defendant were not reduced by the need split to this money with

---

it appear from the investigaiton that he had the level of "professional or managerial discretion" and lack of supervision typically associated with this adjustment.

[3] Although the Employer's counsel indicated that the victim might claim additional losses (PSR ¶ 22), as of the time this document was filed, the government is not aware that any further showing as to restitution has been made.

6

anyone, nor to pay costs out of pocket. The amount of loss alone is very serious and supports a meaningful custodian sentence.

The victim Employer has indicated that it does not favor a sentence of imprisonment, and this is unusual. (PSR ¶ 22.) The victim's circumstances, however, are also unusual. The Employer was insured for almost all of its losses and was made almost completely financially whole immediately. (See PSR ¶¶ 20, 94.) Because the victim's loss was shifted to its insurer, the impact of the loss defendant caused was diffused. Accordingly, the fact that the Employer favors a non-custodial sentence should carry less weight than if this victim had borne its own losses and yet made the same recommendation.

### B. The Nature and Characteristics of the Defendant

Defendant has no criminal record, which supports more lenient treatment. In addition, defendant has undertaken the unusual and welcome step of pre-paying his estimated restitution obligation, without the government having to undertake any efforts to collect. The government is not suggesting that a defendant should receive credit at sentencing for being wealthy enough to pay his criminal debt in full. However, a modest variance to recognize this defendant's prompt action is appropriate to acknowledge the high acceptance of responsibility demonstrated by defendant's restitution prepayment.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct

This offense here is a classic white-collar crime. Blessed with a comfortable job, defendant decided to put his hand in the till to take more money. He used his access to overseas bank accounts to facilitate the fraud and make it more difficult to investigate and

7

prove. A 21-month sentence is sufficiently lengthy to have a deterrent effect against at least some white-collar workers who might do the same.

## V. TERMS OF RESTITUTION ORDER, INCLUDING PAYMENT TO INSURER

The Employer was able to cover almost all of the $278,072 loss described in the factual basis and Plea Agreement by obtaining reimbursement from its insurance carrier, Chubb Group Holdings Inc. ("Chubb"). (See PSR ¶¶ 20, 94 (noting that of the $278,072, the insurer is owed $275,072.07, and Employer is owed $2,999.93.) Accordingly, the Employer remains a victim, but to the extent the victim "received compensation from insurance . . . with respect to a loss, the court shall order that [portion of the] restitution be paid to the person who provided . . . the compensation," (i.e., Chubb). 18 U.S.C. § 3664(j). "[T]he restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation . . . ." (Id.)

Finally, restitution should be ordered due and payable immediately and in full, particularly since the Clerk of the Court is presently holding a substantial amount of funds, and there is no need nor justification to order a payment plan.

Based on the foregoing and the parties' agreement (Plea Agreement at pp. 2-3), the government recommends the following language be inserted in the judgment and commitment order:

> It is further ordered that the defendant shall pay restitution in the total amount of $278,072 pursuant to 18 U.S.C. § 3663A. Restitution is due immediately and in full, and is payable as follows: $2,999.93 to Kretek International Inc., and $275,072.07 to Chubb Group Holdings Inc. Pursuant to 18 U.S.C. § 3664(j), restitution to Kretek International Inc. shall be paid in full before any

8

restitution is paid to Chubb Group Holdings Inc.  To the extent defendant has deposited funds with the Clerk of the Court towards his criminal debt obligations, the restitution amounts set forth in this judgment shall be paid first, before any other criminal debt obligation.  To the extent defendant has pre-paid amounts towards his criminal debt in this case, the Clerk of the Court shall credit those funds against defendant's restitution obligation first.

## VI. CONCLUSION

For the forgoing reasons, the government recommends that the Court sentence defendant to 21 months' imprisonment, followed by a 3-year period of supervised release; order restitution (due immediately and in full) in the amount of $278,072; and order a special assessment (also due immediately and in full) of $100.

Dated: April 25, 2022           Respectfully submitted,

                                TRACY L. WILKISON
                                United States Attorney

                                SCOTT M. GARRINGER
                                Assistant United States Attorney
                                Chief, Criminal Division


                                 */s/Monica E. Tait*
                                MONICA E. TAIT
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA